**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, New Jersey 08540
Thomas A. Linthorst, Esq.
Rudolph J. Burshnic II, Esq.
(609) 919-6642
thomas.linthorst@morganlewis.com
rudolph.burshnic@morganlewis.com

*Attorneys for Defendants Becton, Dickinson and Company and William Sigmund*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HOOMAN NOORCHASHM,<br><br>Plaintiff,<br><br>vs.<br><br>BECTON, DICKINSON AND COMPANY, WILLIAM SIGMUND, JOHN DOES 1-10 (fictitiously named), and XYZ CORPORATIONS 1-10 (fictitiously named),<br><br>Defendants. | Civil Action No.: 2:22-cv-07358-CCC-AME<br><br>**DEFENDANTS' ANSWER AND SEPARATE DEFENSES TO THE COMPLAINT** |

Defendants Becton, Dickinson and Company ("BD") and William Sigmund (collectively, "Defendants"), through their undersigned counsel, hereby respond and provide separate defenses to the Complaint of Plaintiff Hooman Noorchashm.

**INTRODUCTION**

At BD, patient safety is at the heart of the products it makes and the patients it serves. BD encourages its associates to voice their opinions and concerns, so the Company can address

them openly and transparently. In particular, BD takes any patient safety concern that is raised very seriously.

BD terminated Plaintiff's employment not for raising concerns but because he acted contrary to BD's Code of Conduct and the BD Way, including but not limited to: (1) engaging in unprofessional and disrespectful behavior toward his BD colleagues; (2) repeatedly interfering with an ongoing Ethics and Legal investigation by contacting witnesses about topics squarely within the scope of the investigation; and (3) contacting third-party subject matter experts and key opinion leaders without the alignment or participation from appropriate BD team members and/or without the necessary contractual safeguards to protect BD's confidential information. Plaintiff continued to engage in this behavior even after it was addressed by several leaders.

These actions jeopardized BD's legitimate interests, including its commitment to patient safety and its culture of teamwork and collaboration. These legitimate reasons were the bases for BD's termination of Plaintiff's employment.

Defendants further respond to the numbered paragraphs in the Complaint as follows:

## THE PARTIES

1. Defendants admit only that Plaintiff is a former employee of BD, and that Plaintiff represented in his curriculum vitae submitted to BD that he has an MD degree in medicine, a PhD degree in immunology, and certain residency and fellowship training in general and cardiothoracic surgery. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations of Paragraph 1 and therefore leave Plaintiff to his proofs.

2. Admitted.

3. Admitted.

4. Denied.

5. Denied.

## VENUE

6. The allegations of Paragraph 6 are legal conclusions to which no responsive pleading is required.

## FACTS

7. Defendants admit only that Plaintiff represented in his curriculum vitae submitted to BD that he has an undergraduate degree, a medical degree, and a PhD in immunology from the University of Pennsylvania. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations of Paragraph 7 and therefore leave Plaintiff to his proofs.

8. Defendants admit only that Plaintiff represented in his curriculum vitae submitted to BD that he is actively licensed to practice medicine in Pennsylvania and New Jersey and that he has an active "DEA" license. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations of Paragraph 8 and therefore leave Plaintiff to his proofs.

9. Defendants admit only that Plaintiff represented in his curriculum vitae submitted to BD that he has certain experience in general and cardiothoracic surgery, and that he served on certain faculties including the University of Pennsylvania, Harvard Medical School, Thomas Jefferson University Hospital, and the Philadelphia Veterans Administration Hospital as an Instructor, Lecturer, Assistant Professor, or Attending Physician. Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations of Paragraph 9 and therefore leave Plaintiff to his proofs.

10. Defendants admit only that Plaintiff represented in his curriculum vitae submitted to BD that he is a public health and patient safety advocate. Defendants lack sufficient

knowledge or information to form a belief as to the remaining allegations of Paragraph 10 and therefore leave Plaintiff to his proofs.

11.     Admitted, except BD's Workday profile for Plaintiff indicates a start date of February 1, 2022.

12.     Denied, except admitted that before BD hired Plaintiff, it purchased a patent from surgeon Dr. Robert Rehnke relating to implantable prothesis devices made from tissue infiltratable biocompatible materials.

13.     Admitted except that the individual referenced in this Paragraph is named Dr. Robert Rehnke ("Dr. Rehnke"), not Steven Rehnke.

14.     Admitted.

15.     Admitted.

16.     Denied, except admitted that Plaintiff expressed a view that certain properties of P4HB may require a Food and Drug Administration ("FDA") re-classification of products made with P4HB to "Biological," and averred that the allegations regarding a "Biological" FDA classification set forth legal conclusions to which no response is necessary.

17.     Admitted, except to aver that Phasix was originally developed for assisting in tissue repair.

18.     Defendants admit only that P4HB-based mesh and scaffold products are classified as Class II medical devices that require FDA clearance via the 510(k) process, and aver that the remaining allegations are legal conclusions to which no response is required.

19.     Denied, except admitted that in 2019, BD initiated certain pre-submission discussions with the FDA for a Pre-Market Approval ("PMA") and for purposes of designing studies related to the safety and efficacy of P4HB-based products for breast reconstruction

4

surgeries. Upon information and belief, Defendants also admit that the vast majority of breast reconstruction surgeries take place in women with breast cancer.

20. The allegations of Paragraph 20 are legal conclusions to which no responsive pleading is required.

21. Denied, except admitted that in or about June 2022, Plaintiff became aware of cancer recurrences in three patients, which were determined to be unrelated to BD's P4HB-based products.

22. Denied, except admitted that Plaintiff expressed certain views about certain BD projects related to the use of P4HB materials.

23. Denied, except admitted that BD presented certain off-label data, generated by Dr. Rehnke as a result of his practice of medicine, to the FDA in certain PMA pre-submission meetings.

24. Defendants admit only that Dennis McMahon ("McMahon"), then Vice President of BD Medical Affairs, made Plaintiff aware that Dr. Rehnke used Phasix for breast reconstruction in certain post-mastectomy women with breast cancer under the practice of medicine. The remaining allegations are legal conclusions to which no response is required. To the extent any response is required to the remaining allegations, they are denied.

25. The allegations of Paragraph 25 are legal conclusions to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations of Paragraph 25.

26. Denied.

27. Denied, except admitted that BD became aware of cancer recurrences in three patients, which were determined to be unrelated to BD's implantable prothesis devices made from tissue infiltratable biocompatible materials.

28. Denied, except admitted that Plaintiff expressed certain views about the safety of P4HB to individuals at BD including McMahon, William Altonaga ("Altonaga"), and Adam Rappaport ("Rappaport").

29. Denied, except admitted that Plaintiff informed McMahon, Altonaga, and Rappaport that a 6% recurrence rate may be higher than expected and might constitute a safety signal.

30. Defendants admit only that Plaintiff requested that BD report the cancer recurrences to the FDA. The remaining allegations are legal conclusions to which no response is required.

31. Admitted.

32. Denied.

33. Denied.

34. Denied, except admitted that BD's attorneys interviewed Plaintiff in July 2022, and that Plaintiff expressed certain views about the use of P4HB in breast cancer patients and indicated that those alleged issues should be disclosed to the FDA.

35. Denied, excepted admitted that Plaintiff expressed certain views about patient safety regarding a proposed clinical study in Australia that had not yet commenced enrollment.

36. Denied, except admitted that Plaintiff expressed to McMahon and Altonaga certain views about the design of a proposed clinical study in Australia that had not yet commenced enrollment.

37. Denied, except admitted that Plaintiff expressed to McMahon and Altonaga certain views about the design of a proposed clinical study in Australia that had not yet commenced enrollment.

38. Denied, except admitted that BD decided in or about August 2022 not to move forward with a proposed clinical study in Australia that had not yet commenced enrollment.

39. Denied, except admitted that Plaintiff raised certain views about a potential increased risk of recurrence/metastasis in breast cancer patients from the use of P4HB in reconstructive surgeries.

40. Denied, except admitted that Dr. Stephen Badylak is a scientist who performs certain research funded by BD at the University of Pittsburgh's McGowan Institute for Regenerative Medicine ("MIRM").

41. Admitted.

42. Admitted.

43. Admitted.

44. Denied.

45. Denied, except admitted that BD is currently studying if there is any cancer risk related to PH4B-based materials in breast reconstruction surgeries.

46. Denied, except admitted that BD has and continues to perform an in vivo study.

47. Denied, except admitted that Plaintiff raised certain views related to the potential cancer risk of P4HB, including to Altonaga, McMahon, and Ferass Abuzaina, that he requested that BD stop progression to clinical trials, and that BD decided in or about August 2022 not to move forward at that time with a proposed clinical study in Australia that had not yet commenced enrollment.

48. Admitted only insofar as Plaintiff stated the issues described in Paragraph 48 to BD. Defendants deny the remaining allegations of Paragraph 48.

49. Denied.

50. Defendants admit only that Paragraph 50 purports to characterize written communications, and the Court is respectfully referred to those documents for their contents. Defendants deny these characterizations to the extent that they do not accurately reflect the contents of the documents.

51. Defendants admit only that Paragraph 51 purports to characterize written communications, and the Court is respectfully referred to those documents for their contents. Defendants deny these characterizations to the extent that they do not accurately reflect the contents of the documents.

52. Denied, except admitted that McMahon had certain involvement in BD's P4HB breast reconstruction projects and that in July 2022 BD promoted him to Vice President, Medical Affairs, Surgery.

53. Denied, except admitted that McMahon surrendered his medical license in California in 2009.

54. Denied, except admitted that Plaintiff stated that McMahon might have misrepresented his professional qualifications to BD.

55. Defendants admit only that Paragraph 55 purports to characterize Plaintiff's written communication to BD's Human Resources and members of BD's executive team, and the Court is respectfully referred to the document for its contents. Defendants deny these characterizations to the extent that they do not accurately reflect the contents of the document.

56. Denied, except admitted that BD began an internal ethics investigation in response to Plaintiff's complaint and terminated the employment of McMahon in August 2022 following his promotion in July 2022.

57. Admitted.

58. Denied.

59. Denied, except admitted that in June 2022, Plaintiff was charged with adjudicating certain Adverse Event ("AE") reports related to use of GalaFlex Scaffold products, including breast reconstruction and augmentation products.

60. Denied, except admitted that certain AEs originated from surgeons who had used GalaFlex Scaffold products and the AEs were collected by the manufacturer.

61. Admitted.

62. Denied.

63. Denied.

64. Denied.

65. Denied, except admitted that in August 2022 Plaintiff halted his adjudications of GalaFlex-related AEs and refused to continue with those adjudications.

66. Denied, except admitted that Plaintiff informed his colleagues Karen Doyle and Erin Zook to immediately direct data on GalaFlex-related AEs to Rappaport's attention.

67. Denied, except admitted that in or about July 2022 Plaintiff became aware of certain limited verification test failures of a test of certain Genesis Sterilization Containers ("GSCs"), which sterilize surgical equipment and are used by health care facilities in the United States and across the world.

68. Admitted.

69. Denied, except admitted that the proper functioning of GSCs is important for patient safety, including for preventing infections in surgical patients.

70. Admitted.

71. Admitted.

72. Admitted.

73. Denied as stated insofar as the bacterial aerosol test for the GSCs did not exist at the time of the original 510(k) FDA application.

74. Denied as stated. Defendants admit only that certain GSC models failed an older bacterial aerosol test in 2011, and that later all GSC models included in the 510(k) passed a newer bacterial aerosol test.

75. Admitted.

76. Denied.

77. Denied.

78. Admitted.

79. Denied, except admitted that the tasks of the Surgery Field Action Committee ("FAC") included preparing a Field Action Document for distribution to hospitals, doctors, and the FDA.

80. Denied, except admitted that BD's Quality, Regulatory, and Legal departments joined discussions about certain GSC issues with the FAC's members.

81. Denied.

82. Denied, except admitted that BD hired an expert named Ellaine Daniel and that she created an expert document for the FAC.

83. Denied.

84. Denied.

85. Denied.

86. Defendants admit only that Paragraph 86 purports to characterize Plaintiff's emails, and the Court is respectfully referred to the emails for their content. Defendants deny these characterizations to the extent that they do not accurately reflect the contents of the emails.

87. Defendants admit only that Paragraph 87 purports to characterize Plaintiff's emails, and the Court is respectfully referred to the emails for their content. Defendants deny these characterizations to the extent that they do not accurately reflect the contents of the emails.

88. Admitted only insofar as Paragraph 88 reflects Plaintiff's stated allegations. Defendants deny the remaining allegations of Paragraph 88.

89. Defendants admit only that Paragraph 89 purports to characterize Plaintiff's internal complaint, and the Court is respectfully referred to the documents for their content. Defendants deny these characterizations to the extent that they do not accurately reflect the contents of the documents.

90. Defendants admit only that Paragraph 90 purports to characterize emails, and the Court is respectfully referred to the emails for their content. Defendants deny these characterizations to the extent that they do not accurately reflect the contents of the emails.

91. Defendants admit only that Paragraph 91 purports to characterize emails, and the Court is respectfully referred to the emails for their content. Defendants deny these characterizations to the extent that they do not accurately reflect the contents of the emails.

92. Defendants admit only that Paragraph 92 purports to characterize an email, and the Court is respectfully referred to the email for its content. Defendants deny these characterizations to the extent that they do not accurately reflect the contents of the email.

93. Admitted.

# COUNT ONE

### (Retaliation in Violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8)

94. Defendants incorporate by reference all of the responses to the preceding paragraphs of the Complaint as if fully set forth herein.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

# COUNT TWO

### (Common Law Wrongful Discharge)

99. Defendants incorporate by reference all of the responses to the preceding paragraphs of the Complaint as if fully set forth herein.

100. Denied.

101. Denied.

102. Denied.

103. Denied.

104. Denied.

# COUNT THREE

### (Retaliation in Violation of False Claims Act, 37 U.S.C. § 3730(h))

105. Defendants incorporate by reference all of the responses to the preceding paragraphs of the Complaint as if fully set forth herein.

106. Denied.

107. Denied.

108. Denied.

## DEFENDANTS' PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any relief in this matter, including but not limited to the remedies described and relief requested in the WHEREFORE clauses of the Complaint.

## GENERAL DENIAL

Defendants deny each and every allegation in the Complaint that has not otherwise been specifically admitted or denied here. In particular, the Complaint contains certain headings that contain argumentative statements, which do not require a response and, in any event, they are denied.

## SEPARATE DEFENSES

At this time, Defendants assert the following separate defenses to the Complaint without conceding that Defendants bear the burden of proof as to any of them:

1. Plaintiff's claims are barred, in whole or in part, for failure to state a claim upon which relief may be granted.

2. Each and every action taken by Defendants with regard to Plaintiff's employment was based on legitimate, non-retaliatory reasons.

3. Plaintiff's claimed damages are barred to the extent that Plaintiff has mitigated, or failed to mitigate, Plaintiff's alleged damages.

4. Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations, laches, estoppel, waiver, or other equitable defenses.

5. Any claim for punitive damages is barred because, at all relevant times, Defendant made good-faith efforts to comply with all applicable statutes and laws.

6. Assuming *arguendo* (while vigorously denying) that Defendants engaged in any unlawful conduct in connection with Plaintiff's employment and/or separation from employment, Defendants would have engaged in the same course of conduct based on legitimate, non-retaliatory, reasons.

7. If any improper, illegal, or retaliatory acts were taken by any of BD's employees against Plaintiff, it was outside the course and scope of that employee's employment, contrary to BD's policies, and was not ratified, confirmed, or approved by BD.

8. Plaintiff's claims for damages are barred or limited under the after-acquired evidence doctrine.

9. Damages, if any, sustained by Plaintiff were solely and proximately caused by Plaintiff's own negligent, reckless, or intentional conduct.

10. Plaintiff's common law wrongful discharge claim is waived by virtue of the waiver provision in the New Jersey Conscientious Employee Protection Act ("CEPA"). *See* N.J.S.A. § 34:19-8 ("[T]he institution of an action in accordance with [CEPA] shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.").

## ADDITIONAL DEFENSES

Defendants reserve the right to assert additional defenses as Plaintiff's claims are clarified in the course of this litigation.

**WHEREFORE,** Defendants demands judgment as follows:

(a) Dismissing Plaintiff's Complaint in its entirety with prejudice;

(b) Granting Defendants their costs, disbursements, and attorney's fees incurred in this action; and

(c) Granting such other and further relief in favor of Defendants and against Plaintiff as the Court deems just and proper.

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

Dated: January 20, 2023

s/ Rudolph J. Burshnic II
Rudolph J. Burshnic II, Esq.
Thomas A. Linthorst, Esq.
502 Carnegie Center
Princeton, New Jersey 08540
(609) 919-6642
thomas.linthorst@morganlewis.com
rudolph.burshnic@morganlewis.com

*Attorneys for Defendants Becton, Dickinson and Company and William Sigmund*

15

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this date the foregoing document was electronically filed via the ECF filing system and thus served on all counsel of record.

Dated: January 20, 2023                           s/ Rudolph J. Burshnic II
                                                                              Rudolph J. Burshnic II